UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| NEW MAGIC PRODUCTIONS NETWORK, LLC,<br>Plaintiff,<br>v.<br>MANN ROBINSON DISTRIBUTION LLC &<br>MANN ROBINSON STUDIOS LLC,<br>Defendants. | CIVIL ACTION FILE NO.<br>JURY TRIAL REQUESTED |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff New Magic Productions Network, LLC ("New Magic") owns the copyrights in the four-part television series "Walk With Me" (the "Series"). Defendant Mann Robinson Distribution LLC ("MRD") has distributed and sublicensed the Series to third-party platforms, including Tubi and Amazon Prime, and continues to do so. MRD's sole claimed authority to exploit the Series is a

License Agreement that no authorized representative of New Magic ever signed, executed, or ratified. The purported signature on that agreement was not New Magic's, New Magic never authorized anyone to provide it, and the individual who signed the script had no actual or apparent authority to bind New Magic to anything.

Every day MRD continues to distribute the Series, it does so as a matter of law without a license; which is to say, as an infringer under 17 U.S.C. § 501. New Magic accordingly moves for a preliminary injunction halting that ongoing infringement pending resolution of this action.

## II. STATEMENT OF FACTS

New Magic incorporates by reference the factual allegations of the Complaint and the accompanying Declaration of Tommie Glover ("Glover Decl."), New Magic's Creator, Executive Producer, and CEO, submitted as Exhibit G to the Complaint.

In summary: New Magic owns U.S. Copyright Registration Nos. PA 2-589-379, PA 2-595-617, PA 2-595-618, and PA 2-595-633 for the Series. (Compl. ¶ 16, Exs. A–D.) One Marshawn Davis ("Davis") wrote the underlying script but was never an officer, member, agent, or employee of New Magic and had no authority to bind it. (Compl. ¶¶ 12, 14–15.) The License Agreement purporting to grant

MRD exclusive worldwide distribution rights was signed by Davis and by an unknown individual purportedly on New Magic's behalf. (Compl. ¶¶ 20, 22.) Glover has confirmed under penalty of perjury that the signature is not his and that he never authorized anyone to sign on New Magic's behalf. (Glover Decl. ¶¶ 6–8.)

New Magic disputed the Agreements' validity by cease-and-desist letter on December 11th, 2025, and demanded that Defendants cease distribution. (Compl. ¶ 29.) MRD has not stopped distributing the Series, has not paid New Magic any amount consistent with the parties' actual arrangement, and as recently as July 23rd, 2026, sent an accounting that omitted several quarters of revenue and represented that a payment had been sent to New Magic that New Magic never received. (Compl. ¶¶ 33–39.)

## III. LEGAL STANDARD

The Copyright Act dictates that Courts may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502.

A party seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury absent an injunction; (3) that the threatened injury outweighs whatever damage the injunction may cause the opposing party; and (4) that granting the injunction

would not disserve the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). New Magic satisfies each factor here.

## IV. ARGUMENT

### a. New Magic is Substantially Likely to Succeed on the Merits.

To prove copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying of protectable elements. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). New Magic's certificates of registration, attached as Exhibits A–D to the Complaint, constitute prima facie evidence of the validity of the copyrights and of the facts stated in the certificates. 17 U.S.C. § 410(c).

MRD cannot dispute that it has reproduced, distributed, and publicly performed the Series, or that it has done so without a license signed by anyone with authority to bind New Magic. Under Georgia agency law, a principal is bound only by acts within an agent's actual or apparent authority. O.C.G.A. § 10-6-1 *et seq*. Davis's role was limited to writing the underlying script; he held no office, membership interest, or employment with New Magic, and nothing in the parties' course of dealing could have led Defendants reasonably to believe otherwise; particularly where, as alleged, Defendants were separately and contemporaneously dealing directly with New Magic regarding production and distribution on informal terms. (Compl. ¶¶ 18, 44.)

Because no one with actual or apparent authority to bind New Magic executed the License Agreement, MRD's claimed license is void as to New Magic, and its continued reproduction, distribution, and public performance of the Series constitutes infringement under 17 U.S.C. § 501 as a matter of law. New Magic is accordingly substantially likely to succeed on both its declaratory judgment claim (Count I) and its infringement claim (Count III).

**b. <u>New Magic is Suffering, and Will Continue to Suffer, Irreparable Harm.</u>**

Courts have held that "a copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3rd Cir. 1983) (*citing* 3 *Nimmer on Copyright* § 14.06[A], at 14–50, 14–51 & n. 16).

Regardless, New Magic does face irreparable harm in the absence of an injunction. New Magic would like to capitalize on the early success of the Series by continuing to license it to various services which make it available to the public. But MRD's continued, unauthorized distribution forecloses that opportunity: any prospective licensee approached by New Magic would confront a clouded chain of title and a competing distributor already exploiting the Series in the marketplace, undermining New Magic's ability to negotiate on its own terms or with platforms

of its choosing. This loss of control over the timing, terms, and manner of the Series' exploitation is not a harm that a later damages award can undo; once a licensing window closes or a platform relationship is ceded to MRD's unauthorized distribution, New Magic cannot simply re-enter that market on the same footing. Each additional sublicense MRD executes further entrenches the unauthorized distribution scheme and compounds the difficulty of unwinding it, meaning New Magic's injury deepens with every day the infringement continues unchecked.

**c. <u>The Balance of Hardships Favors New Magic.</u>**

MRD's only claimed right to distribute the Series rests on an agreement New Magic never authorized. An injunction preventing MRD from continuing to exploit a work it has no license to exploit imposes no cognizable legal hardship; it simply prevents MRD from continuing conduct it was never entitled to undertake. Any lost distribution revenue to MRD is readily quantifiable and, if MRD ultimately prevails on the validity of the Agreements, compensable. By contrast, New Magic's harm from continued, unauthorized exploitation of its Series compounds daily and is substantially less quantifiable, as set forth above. The balance of hardships tips decisively in New Magic's favor.

**d. <u>The Public Interest Favors Injunctive Relief.</u>**

The public interest favors enforcement of valid copyright ownership against unauthorized exploitation. Upholding copyright protection serves the public

interest by preventing the misappropriation of the skills, creative energies, and resources invested in a protected work. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.") (quoting *Klitzner Industries, Inc. v. H. K. James & Co., Inc.*, 535 F. Supp. 1249 (E.D. PA., 1982)).

That interest is squarely implicated here: MRD's continued distribution rests entirely on a License Agreement that no authorized representative of New Magic ever signed, and permitting that distribution to continue would reward reliance on signatures procured from individuals who had no authority to give them. An injunction does not disserve the public by removing the Series from circulation; MRD remains free to negotiate a legitimate license with New Magic on terms New Magic actually authorizes, and the public's access to the Series can resume on that lawful footing. What the public interest does not favor is a marketplace in which unauthorized agreements are allowed to stand simply because a distributor moved quickly enough to sublicense a work before its validity could be tested in court.

## V. <u>BOND</u>

Federal Rule of Civil Procedure 65(c) requires the movant to give security in an amount the Court considers proper. Because MRD's only quantifiable exposure

from an injunction is its own distribution fee on revenue it has no license to earn in the first place, New Magic respectfully submits no bond is warranted under the present circumstances.

## VI. CONCLUSION

For the foregoing reasons, New Magic respectfully requests that the Court grant its Motion for Preliminary Injunction and enter the accompanying proposed order.

This 11th of August, 2026.

*/s/ Jacob Medoff*
Jacob O. Medoff
GA Bar No. 211318
**Conway Eader LLLP**
50 Hurt Plz SE
Suite 1142
Atlanta, GA 30303
Telephone: (470) 764-7164
jake@conwayeader.com
*Attorney for Plaintiff*